(C.D. 2417)

R. W. SMITH *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 31, 1963)

*Stein & Shostak* (*Richard M. Kozinn, Marjorie M. Shostak*, and *S. Richard Shostak* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Richard H. Welsh, Sheila N. Ziff*, and *Murray Sklaroff*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: According to the report of the collector of customs in transmitting plaintiff's protest to this court, it appears that certain imported merchandise was classified in liquidation as "band or hoop, iron or steel, cut to lengths, or partly or wholly manufactured into hoops or ties, for baling cotton or any other commodity," which is provided for in paragraph 314 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 314), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and duty was imposed thereon at the rate of 0.1 cent per pound.

Plaintiff claims that said merchandise is entitled to entry free of duty within the provision for "Agricultural implements" in paragraph 1604 of said act (19 U.S.C. § 1201, par. 1604).

Paragraph 314, as modified, *supra*, is in terms identical with paragraph 314, as originally enacted, the only change being a reduction in the rate of duty. It reads:

Hoop or band iron, and hoop or band steel, cut to lengths, or wholly or partly manufactured into hoops or ties, coated or not coated with paint or any other preparation, with or without buckles or fastenings, for baling cotton or any other commodity_____ 0.1¢ per lb.

Paragraph 1604, *supra*, reads as follows, the proviso being stressed:

Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided, That no article specified by name in Title I shall be free of duty under this paragraph.*

It appears from the record that the cotton ties were imported in the form of strips of steel, 11 feet, 6 inches long, accompanied by buckles which are used as fasteners. Since paragraph 314 provides for steel ties "with or without buckles or fastenings," those accessories may be disregarded in determining the legal question presented here.

The six witnesses who appeared at the trial were called by the plaintiff. They testified in detail to the methods employed in harvesting, ginning, baling, and marketing of cotton. It was also established that, with dealers in and consumers of the subject merchandise, the articles are commonly known as cotton bale ties.

There appears to be no dispute as to the material facts of the case.

In its brief, the United States makes the following concessions:

The Government concedes (1) that the uncontroverted testimony of plaintiff's witnesses establishes that throughout the entire cotton growing area of the United States steel ties similar to those involved herein have been and are now chiefly used at the cotton gins for baling cotton; that 90% of the total production of steel ties are so used and that the remaining 10% are used at the cotton gin to compress the cotton linters into bales with the use of batting and the involved ties and that has been true as far back as 1911; (2) that said steel ties are chiefly employed in agricultural pursuits which pertain to the substantial requirement of life (food) and man's comfort (raiment), in this instance cotton; and (3) that said steel ties are agricultural implements.

Assuming *arguendo*, without here deciding, that ties for baling cotton are in fact agricultural implements, the language of paragraph 1604 clearly inhibits classification of cotton baling ties therein if it appears that such articles are "specified by name" in the dutiable list. Neither can they be classified in paragraph 1604 as "* * * all other agricultural implements of any kind or description, * * *" if they are otherwise specially provided for.

Plaintiff cites numerous cases, which we find unnecessary to discuss here, in support of his contention that cotton baling ties are agricultural implements.

Several judicial authorities are also cited by plaintiff in support of his contention that the subject merchandise is not excluded from paragraph 1604 as an "article specified by name in Title I." Upon this point, special emphasis is laid upon the case of *Wilbur-Ellis Co.* v. *United States*, 26 CCPA 403, C.A.D. 47. In that case, the court held that steel baling ties composed of wire cut to length, chiefly used for baling hay, were agricultural implements and were not excluded from paragraph 1604 as articles "specified by name in Title I," notwithstanding the provision in paragraph 317 for "wire commonly used for baling hay and other commodities." The appellate court followed its earlier decision in *M. Martinez & Co.* v. *United States*, 24 CCPA 285, T.D. 48703. The sole issue in that case was whether steel bale ties used for baling hay were dutiable as articles, not specially provided for, composed wholly or in chief value of wire, in paragraph 397 of the Tariff Act of 1930, or as "wire commonly used for baling hay" within the meaning of paragraph 317 of said act. The court held that steel bale ties were completely manufactured articles and, therefore, in the tariff sense, something more than wire commonly used for baling hay. Consequently, the articles were held to have been properly classified in paragraph 397.

It will be noted that the *Martinez* case presented no claim for classification of the merchandise as agricultural implements in paragraph 1604. However, both the *Wilbur-Ellis* and *Martinez* cases definitely held that baling ties, composed of wire cut to lengths, one end of the wire being turned back and twisted so as to form a loop,

designed for use, and used, in baling hay, were not specified by name in the provision in paragraph 317 for "wire commonly used for baling hay and other commodities." It is a natural inference from the *Wilbur-Ellis* and *Martinez* cases that the provision above quoted from paragraph 317 was intended to cover wire as a material for the manufacture of baling ties, whereas paragraph 314 provides specifically for a completely manufactured article, namely, steel ties for baling cotton or any other commodity. We find nothing in those cases inimical to the conclusion we have reached herein.

The proximity of paragraphs 314 and 317 leaves no room for doubt that both paragraphs were carefully studied by the drafters, legislative committees, and the Congress when the paragraphs were enacted into law and that the textual differences resulted from thoughtful deliberation. It is difficult to conceive of a more definite specification of an article than is set forth in paragraph 314 with respect to the commodity now under consideration. It is described by material (steel); manipulated (cut to lengths) and wholly manufactured; specified by name (ties); and finally identified by use (for baling cotton).

In addition to the *Wilbur-Ellis* case, plaintiff cites the following authorities to support his main contention herein.

*United States* v. *American Express Co.*, 12 Ct. Cust. Appls. 483, T.D. 40693.

*United States* v. *S.S. Perry*, 25 CCPA 282, T.D. 49395.

*John H. Graham & Co., Inc.* v. *United States*, 41 Cust. Ct. 67, C.D. 2022.

*United States* v. *Compania Azucarera Del Camuy, Inc.*, 45 CCPA 4, C.A.D. 664.

In the *American Express* case, it was held that the proviso in paragraph 1504 of the Tariff Act of 1922, the same as paragraph 1604, *supra*, did not operate to exclude from free entry certain articles with sharp cutting edges used in beet-sugar-making machinery, notwithstanding a provision in the dutiable list for "all other cutting knives and blades used in power or hand machines."

In the *Perry* case, it was held that a provision for "All compounds of cellulose * * * made into finished articles" did not specify by name celluloid poultry leg bands.

In the *Graham* case, a provision for "pruning and sheep shears, and all scissors and other shears" was regarded by the court as a group designation and not an *eo nomine* provision and, hence, did not include grape shears.

The *Compania* case related to sugar cane slings, wholly manufactured from chain. It was held that the provision in paragraph 329 for "all articles manufactured wholly or in chief value of chain shall not be subject to a lower rate of duty than that imposed upon the

chain of which it is made, or of which chain is the component material of chief value" did not specify by name the sugar cane slings.

It is too obvious to require extended discussion that the factual circumstances and conditions involved in the cases above referred to demonstrate that they are clearly distinguishable from the case at bar.

Plaintiff stresses the point that, since cotton gins are specifically enumerated as one of the exemplar items in paragraph 1604, it is logical to assume that cotton baling ties should be accorded the same classification. However, if Congress, in granting freedom from duty to cotton gins, had intended a similar privilege for cotton baling ties, it would have done so in clear and unequivocal terms.

It is also urged by plaintiff that since these ties are known throughout the cotton growing sections of the United States as "cotton bale ties" they are not "specified by name" in paragraph 314.

The court is of the opinion, however, that it would be trifling with the science of semantics to say that the provision in paragraph 314 for "hoop or band steel, cut to lengths, or wholly or partly manufactured into hoops or ties, coated or not coated with paint or any other preparation, with or without buckles or fastenings, for baling cotton or any other commodity," does not specifically name and describe the merchandise in controversy. If not, it is difficult to comprehend when, if ever, the provision in paragraph 314 would become operative. We should not impute to Congress the "doing of a useless and vain thing." *Fensterer & Voss (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 105, 107, T.D. 40029.

We have carefully examined all cases cited by counsel but find nothing therein to dissuade us from the conclusion we have reached.

The protest is overruled in all respects and judgment will issue accordingly.